**Lyle O. RAMSEY and Arthur B. Ramsey, Appellants,**

v.

**COBRA SERVICES, INC., Appellee.**

No. 7886.

United States Court of Appeals Tenth Circuit.

Aug. 27, 1965.

————————

George Camp, Oklahoma City, Okl. (Love, Camp & Amick, Oklahoma City, Okl., with him on the brief), for appellants.

Robert D. Looney, Oklahoma City, Okl. (Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., with him on the brief), for appellee.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

This appeal involves conflicting claims between Arthur B. Ramsey and Lyle O. Ramsey, husband and wife, on the one hand, and Cobra Services, Inc., on the other hand to a fund of $8,000 in the hands of John A. Hendershot, Jr., John T. Gibson, and Paul Brown, asserted in a stakeholders' suit brought by Hendershot and Gibson.

Lyle O. Ramsey was the owner of a one-fourth interest in the working interest of an oil and gas lease, known as the Hefner Lease, in Stephens County, Oklahoma. Arthur B. Ramsey was the operator of such lease. Cobra was the owner of the working interest in a lease, known as the Truitt-Winters Lease, also located in Stephens County, Oklahoma. K & B Compression Company was compressing gas from both leases and had compression facilities located thereon.

Pan American Petroleum Corporation had initiated by petition a proceeding before the Oklahoma Corporation Commission to unitize an area of 750 acres, including the two leases referred to above. The recommended plan of unitization attached to the petition, as required by 52 Okl.St.Anno., § 286.4, provided for a percentage participation by the owners of the Hefner and Truitt-Winters Leases in the unit production. Such owners contended they were entitled to a substantially larger participation and for that reason opposed the unitization.

While the proceeding for unitization was pending, Pan American made an offer to buy the working interests in the two leases. The offer was accepted and a contract was entered into for the sale by the owners of such interests and K & B Compression Company's facilities on the leases to Pan American for $250,-000. The contract gave the sellers a stipulated period of time to correct any defects in their title. $90,000 of the $250,000 was to go to the owners of the Hefner Lease. Of the $90,000, Lyle O. Ramsey was to receive $22,500.

In the negotiations between the parties, Ramsey represented Lyle O. Ramsey, and at times she was also represented by her counsel, Mr. Lee Thompson. The Ramseys first agreed to the sale, but later refused to execute the assignment documents to Pan American, for reasons stated by Arthur B. Ramsey referred to hereinafter.

At a meeting at which John A. Hendershot, Jr., John F. Gibson, Arthur B. Ramsey, and Paul Brown were present, Ramsey stated to Hendershot, who represented Cobra, that there was a tax lien of $11,000 against the Lyle O. Ramsey's interest in the Hefner Lease; that a tax lien had been issued which was in

the office of the District Director of Internal Revenue and was being withheld pending the completion of the sale on the expectation of collecting the unpaid taxes out of the proceeds of the sale; that he was indebted for lease operating expenses in the amount of $2,887, which were lienable items against the lease; that Nuckolls-Bell Drilling Company held a judgment which was a cloud on Lyle O. Ramsey's title to her interest in the lease and $22,000 would be required to satisfy such judgment; and that Lyle O. Ramsey could not execute the transfer documents because she could not convey a good title to her interest in the Hefner Lease. Because it was fearful that the outcome of the unitization proceeding might be adverse to it, Cobra was anxious to consummate the sale. It developed from the representations made by Ramsey that the Ramseys lacked approximately $8,000 of having enough money coming to them from the sale to pay the income taxes and operating expenses and accrued interest thereon and to secure a release of the Nuckolls-Bell judgment. Relying on Ramsey's representations, Hendershot, representing Cobra, agreed to pay $8,000 of the amount required to secure a release of the Nuckolls-Bell Drilling Company judgment and the Ramseys agreed to pay the balance of that requirement and the lien indebtedness out of the funds received from the sale.

Cobra paid the $8,000 on the Nuckolls-Bell judgment and it was released. Ramsey obtained a letter dated May 27, 1963, from the District Director of Internal Revenue to the effect that he had searched the lien records of the Internal Revenue Service and could find no record of a federal tax lien against the Ramseys. That letter was furnished to Pan American by Ramsey. He also made an affidavit, dated June 5, 1963, to the effect that all of the operating expenses on the Hefner Lease had been paid. When Ramsey agreed to make such payments from funds received from the sale, he stated that he had an arrangement with the Internal Revenue Service to pay $6,000 in cash and that the department agreed to carry the unpaid balance of $5,000, secured by a mortgage on other interests owned by the Ramseys, the arrangement to be carried out after the transaction with Pan American was completed. The sale to Pan American was consummated. The consideration for the sale was paid and all but $8,000 thereof distributed to the sellers.

The statement made by Ramsey with respect to the tax lien was false and he knew it was false when made. Cobra relied on such representation and, so relying, paid $8,000 to secure the release of the judgment and as a result was damaged in that amount.

The pretrial order narrowed the issues as follows:

"(1) Whether the defendants Ramsey made material misrepresentations and perpetrated fraud upon the defendant, Cobra Services, Inc., as to the fact of a tax lien having been issued by the United States Department of Internal Revenue and the amount of taxes.

"(2) Whether the elements of fraud will be established by the evidence."

The trial court found the facts as stated above with respect to the fraudulent representation, the reliance thereon by Cobra, the payment of the $8,000 to Nuckolls-Bell, and that in the transactions between the parties Lyle O. Ramsey was represented by Ramsey. It rendered judgment for the $8,000 retained by the stakeholders in favor of Cobra.

The evidence of Cobra's witnesses Hendershot, Gibson, and Paul Brown, an attorney who had represented the owners of the Hefner Lease in the unitization proceedings, fully supports the findings of the trial court, which are not clearly erroneous, and such findings fully support the trial court's legal conclusions and judgment in favor of Cobra.

Affirmed.